The opinion of the court was delivered by
TilghmaN, C. J.
This mortgage, which is drawn in the usual form, is an absolute conveyance of the land, with a proviso, that it shall be void on the mortgagor’s making all the payments specified in the deed, at the time specified. The time for making three payments expired — the condition not being complied with; so that the mortgage was forfeited. What, then, is the remedy of the mortgagee? Where the mortgage is accompanied with bonds for payment of the money, as was the case here, the mortgagee may bring suit on the bonds. But he is not obliged to do it; and for particular reasons, it was thought not advisable to do it, in the present instance. But why may he not recover the land in an ejectment? He has a perfect legal estate, which is all that is necessary to support that action. It lies on the defendants, therefore, who deny that an ejectment lies, to make good a position which is contrary to general principles. They rély on the act of 1705; “for taking lands in execution, for the payment of debts.” *242 This act, after reciting that mortgagees were put to great difficulties in recovering their money, by reason of the equity of redemption which existed in the mortgagors, provided a remedy by scire fa-cias, by which the mortgaged premises might be sold. Before this, there was no mode of obtaining a sale by any kind of process on the mortgage. In England, the mortgagee had the double remedy, of ejectment on the mortgage, and a bill in equity to foreclose the mortgagor’s equity of redemption; and, as Lord Hardwicke says, in the case of Garforth v. Bradley, (2 Vern. 678,) he might prosecute both at the same time. The bill in equity answered the purpose of a sale, because, after a foreclosure of the equity of redemption, the title of the mortgagee was complete, and he might sell the property or keep it, as was most to his advantage. But in Pennsylvania, where there was no court of equity, the mortgagor was confined to his ejectment — a very inconvenient remedy; because, after he had recovered the possession, he was still liable to the equity of redemption of the mortgagor. But the act of assembly, which gave the scire facias, in lieu of the bill of foreclosure, did not suffer the writ to be issued in less than twelve months after the last payment in the mortgage became due. Hence it has been argued, that an ejectment cannot be supported, until twelve months after the last payment is due. There would be good ground for this argument, if the mortgagee were to extinguish the equity of redemption, by his recovery in ejectment. But it is not so. Upon his entry after judgment, he is accountable for the profits; and the mortgagor would be entitled to repossession, on payment or tender of so much of the principal as was due, all arrears of interest, and the costs of suit. The act of assembly was intended for the benefit of the mortgagee. It gave him a new and efficacious remedy, without restraining any remedy which he had before. There is not a word like it in the act, and the whole argument is founded on inference. But it is easy to show, that the inference is not only unnecessary, but unjust. It is one thing to protect the property of the mortgagor from sale, until the the whole debt is due, and another, to deprive the mortgagee of the means of recovering, without a sale, that part of the debt which is due. In the present instance, there are ten years to come, before the last payment is due; and the consequence of the defendants’ argument would be, that the mortgagor should keep the possession, and enjoy the profits of the land which he had pledged, for all this time, without paying one cent of either principal or interest. And thus a great part of the debt might be lost. For although the estate might be equal to the discharge of the whole, provided the mortgagee were let in to the receipt of the profits, which would keep down the interest, and perhaps pay part of the principal, yet it might be altogether inadequate to the accumulated amount of principal and interest, at the end of thirteen year's. The mortgagor, having no hopes of redemption, would probably exhaust and waste *243 the land, in order to draw from it as much as possible during his possession; while the mortgagee would be reduced to the miserable necessity of standing by, with folded arms, his security perishing day by day before his eyes. Where consequences like this might ensue, it would require nothing less than clear negative expressions, in the act of assembly, to deprive the mortgagee of his remedy by ejectment. I think it has not been contended, by the learned counsel for the defendants, that, the giving of the scire facias took away the ejectment in all cases of mortgage. Indeed, it could with no propriety have been so contended, because it has frequently been declared from the bench that an ejectment lies; and, in the case of Simpson’s Lessee v. Ammons, (1 Binn. 175,) it was so expressly decided. And if it lies at all, it lies in its full extent, uncontrolled by the act of 1705. The reason why so few ejectments have been brought, is, that in general the scire facias is a remedy much more effectual. But there are numerous sales of land, upon payments by instalments, which recur every year, where the mortgagee is driven to his ejectment, though very inconvenient, to avoid worse consequences. It is of great importance, therefore, that the law on this point should be settled; and we are all very clear, that the plaintiff is entitled to recover. The judgment of the Court of Common Pleas is therefore to be reversed, and a venire de novo awarded.
Judgment reversed, and a venire facias de novo awarded.